Rel: July 17, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2026

_____

## CL-2026-0005

_____

### Ex parte Melester Ford

### PETITION FOR WRIT OF MANDAMUS

### (In re: Janae Mitchell

### v.

### Melester Ford)

### (Dallas Circuit Court: CV-25-900116)

PER CURIAM.

Melester Ford has filed a petition for the writ of mandamus asking this court to compel the Dallas Circuit Court to vacate certain interlocutory orders entered against him and to dismiss the underlying

case for lack of subject-matter jurisdiction. For the reasons stated below, we grant the petition in part and deny it in part.

Background

On February 19, 2025, Ford filed a three-count complaint against Janae Mitchell in the Dallas District Court ("the district court"). In the first count, Ford alleged that Mitchell had breached a contract between the parties in which Mitchell had "agreed to purchase [a] mobile home for $7,000 at the rate of $147.12 per month, to pay a lot fee, provide insurance, and pay the yearly state registration fees for the mobile home ...." In the second count, Ford stated a "replevin" claim seeking return of the mobile home to him. In the third count, Ford alleged that he was the owner of the lot upon which the mobile home sat, that Mitchell had failed to pay the lot-rental fee, and that he had provided Mitchell with written notice that her right to possession of the lot had been terminated; he demanded possession of the lot and requested an award of $11,166.12 in unpaid rent and late fees.

Mitchell did not appear for trial, and, on March 14, 2025, the district court entered a judgment ("the district-court judgment") in favor of Ford on all three counts, evicting Mitchell from the lot, awarding

2

possession of the mobile home and the mobile-home lot to Ford, and awarding Ford the requested damages. On March 20, 2025, Mitchell, acting pro se, filed a postjudgment motion by letter, and, on April 11, 2025, after a hearing, the district court entered an order denying the motion. On April 25, 2025, Mitchell appealed the district-court judgment to the Dallas Circuit Court ("the circuit court").

On October 29, 2025, Ford failed to appear for trial, as scheduled by the circuit court, and the circuit court entered an order in favor of Mitchell ("the circuit-court order") in which it awarded her possession of the mobile home and set a hearing to assess damages. On November 24, 2025, Ford filed a motion to vacate the circuit-court order, arguing that he had failed to appear for the trial because he had not been notified of the trial setting. On December 2, 2025, Ford filed a motion to dismiss the case, arguing that the circuit court did not have subject-matter jurisdiction over the case because Mitchell had not timely appealed the district-court judgment. On December 3, 2025, the circuit court heard oral arguments on those motions, and the circuit-court judge indicated that the motions would be denied. Following the hearing, Ford filed a motion labeled as a Rule 60(b)(4), Ala. R. Civ. P., motion to vacate the

3

circuit-court order as void.[1] Later that day, the circuit court entered written orders denying all of Ford's pending motions.

On January 7, 2026, Ford filed a petition for the writ of mandamus in this court.

## Issue

In the petition, Ford argues that the circuit court never acquired subject-matter jurisdiction over the underlying case because, he says, Mitchell did not timely appeal the district-court judgment. Ford maintains that the circuit-court order is void and that this court should direct the circuit court to vacate that order and to dismiss the case.

## Standard of Review

A petition for the writ of mandamus is a proper vehicle to review an interlocutory order denying a motion to dismiss and a motion to vacate for lack of subject-matter jurisdiction. See Ex parte Johnson, 715 So. 2d

---

[1]Because the circuit-court order was not a final judgment, leaving the case open for further proceedings to assess damages, see Lucky v. Deutsche Bank Nat'l Tr. Co., 46 So. 3d 966, 967 (Ala. Civ. App. 2009), Rule 60(b)(4), Ala. R. Civ. P., did not apply. See generally Ford Motor Credit Co. v. Carmichael, 383 So. 2d 539 (Ala. 1980) (holding that Rule 60(b) applies only to final judgments and not to interlocutory orders).

783 (Ala. 1998). We apply the following standard of review to Ford's petition:

> "'Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'"

Ex parte Perfection Siding, Inc., 882 So. 2d 307, 309-10 (Ala. 2003) (quoting Ex parte Integon Corp., 672 So. 2d 497, 499 (Ala. 1995)).

Analysis

Ford argues that the time for appealing the district-court judgment was governed by Ala. Code 1975, § 35-9A-461(d), a part of the Alabama Uniform Residential Landlord and Tenant Act ("the AURLTA"), Ala. Code 1975, § 35-9A-101 et seq. The AURLTA applies to residential landlord-tenant relationships. Ala. Code 1975, § 35-9A-102(c). The AURLTA recognizes that a residential landlord may maintain an action against a tenant for eviction in a district court. Ala. Code 1975, § 35-9A-461(a) and § 35-9A-141(a)(5). Upon the entry of a final eviction judgment, any party aggrieved by the judgment may appeal to the appropriate circuit court. See generally Radcliff v. Hall Hous. Invs., Inc., 47 So. 3d 1258, 1262 (Ala. Civ. App. 2010).

5

"Notwithstanding subsection (a) of [Ala. Code 1975, §] 12-12-70, any party may appeal from an eviction judgment entered by a district court to the circuit court at any time within seven days after the entry thereof. The filing of a timely post-judgment motion pursuant to the Alabama Rules of Civil Procedure shall suspend the running of the time for filing a notice of appeal. In cases where post-judgment motions are filed, the full time fixed for filing a notice of appeal shall be computed from the date of the entry in the civil docket of an order granting or denying such motion, or the date of the denial of such motion by operation of law pursuant to Rule 59.1 of the Alabama Rules of Civil Procedure."

§ 35-9A-461(d).

Ford notes that Mitchell filed a postjudgment motion within six days of the entry of the March 14, 2025, district-court judgment, which the district court adjudicated by entering an order denying the motion on April 11, 2025. Ford maintains that Mitchell had seven calendar days from April 11, 2025, to file her notice of appeal. See § 35-9A-141(a)(3) and Jones v. DeRamus, 199 So. 3d 74, 76 (Ala. Civ. App. 2015) (explaining that, under § 35-9A-461(d), a tenant has seven calendar days to appeal an eviction judgment). Because Mitchell did not file her notice of appeal until April 25, 2025, Ford argues, Mitchell's appeal was untimely and did not invoke the jurisdiction of the circuit court, thereby rendering the circuit court's subsequent proceedings void for lack of subject-matter jurisdiction. See Boswell v. Lowery, 107 So. 3d 212 (Ala. Civ. App. 2012)

6

(holding that residential tenant's failure to file a timely notice of appeal to the circuit court pursuant to § 35-9A-461(d) was a jurisdictional defect that prevented the circuit court from acquiring subject-matter jurisdiction over the appeal and rendered circuit-court proceedings and judgment void).

I.     Does the AURLTA apply?

To ascertain whether § 35-9A-461(d) governs the time to appeal in this case, we must first determine whether the AURLTA applies.  In the complaint, Ford alleged that he had sold a mobile home to Mitchell in 2019.  According to the terms of the purchase agreement, which was attached to Ford's complaint, the mobile home was located on a lot that Ford owned.  In her answer to the petition for the writ of mandamus, Mitchell alleges, without contradiction, that she used the mobile home as her residence.  See Ex parte Butts, 355 So. 3d 861, 867 (Ala. Civ. App. 2021) (holding that uncontroverted factual assertions in answer to petition for the writ of mandamus must be taken as true).  In the complaint, Ford alleged that Mitchell had defaulted on the purchase agreement, and he sought damages for breach of contract and the return of the mobile home under the theory of replevin.

7

The AURLTA does not apply to an arrangement involving "occupancy under a contract of sale of a dwelling unit or the property of which it is a part, if the occupant is the purchaser or a person who succeeds to the interest of the purchaser." Ala. Code 1975, § 35-9A-122(2). A "dwelling unit" means "a structure or the part of a structure, including a manufactured home, that is rented as a home, residence, or sleeping place by one or more persons." § 35-9A-141(4). The materials before this court show that the parties were involved in an arrangement pursuant to which Mitchell occupied the mobile home as her dwelling unit under a contract of sale, not pursuant to a rental agreement, cf. Johnson v. Windham, 415 So. 3d 671 (Ala. Civ. App. 2024) (recognizing that the AURLTA applies to mobile-home leases), thereby precluding application of the AURLTA to that arrangement.

Ford also alleged in the complaint that the parties had entered into a separate agreement pursuant to which Mitchell rented the lot upon which the mobile home was located for an unspecified fee. That arrangement did not establish a residential landlord-tenant relationship that was governed by the AURLTA. See Ala. Code 1975, § 35-9A-102(c). The AURLTA defines "landlord" to mean "the owner, lessor, or sublessor

of the dwelling unit or the building of which it is a part, and it also means a manager of the premises." § 35-9A-141(7). "Tenant" refers to "a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others." § 35-9A-141(16). Ford apparently owned the lot on which the mobile home was located, but the lot was not a structure that could be considered a dwelling unit. By entering into the lot agreement, the parties formed a ground-lease agreement, authorizing Mitchell to use the lot to park her mobile home, see Stockton v. CKPD Dev. Co., 982 So. 2d 1061, 1066 (Ala. 2007) (recognizing a ground lease as a lease of the land only and not of the structures appurtenant thereto), not a rental agreement allowing Mitchell to occupy a dwelling unit.

Because the AURLTA did not apply to the relationship between the parties, § 35-9A-461(d) did not govern the time for appealing the March 14, 2025, district-court judgment.

II.   What law governs the time for appeal?

It remains, however, that a circuit court may exercise jurisdiction over an appeal from a district-court judgment only upon the timely filing of a notice of appeal. Put conversely, the failure to file a timely notice of appeal of a district-court judgment is a jurisdictional defect that prevents

the circuit court from acquiring jurisdiction over the case. See Croskey v. Crawford, 177 So. 3d 468, 470 (Ala. Civ. App. 2014). Ford argues that the appeal was not timely filed. Although he relies on § 35-9A-461(d) to support his argument, we are not constrained by that argument to limit our jurisdictional inquiry. See Ex parte Merrill, 264 So. 3d 855, 863 n.7 (Ala. 2018) (providing that "[an appellate court] may, in considering a mandamus petition, raise on its own issues regarding the trial court's lack of jurisdiction, even if those specific issues are not raised by the parties"). Thus, we consider whether the appeal was untimely under the applicable law.

In this case, Ford stated in his complaint breach-of-contract, detinue, and unlawful-detainer claims. In the first count of the complaint, Ford alleged that Mitchell had breached their purchase agreement, and he sought compensatory damages. See Jadick v. Nationwide Prop. & Cas. Ins. Co., 98 So. 3d 5, 11 (Ala. Civ. App. 2011) (describing the elements of a breach-of-contract action). In the second count of the complaint, Ford claimed a right to repossess the mobile home as his personal property, which is the essence of a common-law replevin action, now governed by Ala. Code 1975, § 6-6-250 et seq., as a statutory

detinue action. See Friedman v. Friedman, 971 So. 2d 23 (Ala. 2007) (explaining that the common-law actions of replevin and detinue have been combined into a statutory action for detinue under Ala. Code 1975, § 6-6-250 et seq.). In the third count of the complaint, Ford alleged that Mitchell's leasehold interest in his lot had been terminated due to her failure to pay the lot-rental fees, and he demanded possession of the lot, along with damages for unpaid rent and late fees. See Ala. Code 1975, § 6-6-310(2) (defining "unlawful detainer" to mean "[w]here one who has lawfully entered into possession of lands as tenant fails or refuses, after the termination of the possessory interest of the tenant, to deliver possession of the premises to anyone lawfully entitled or his or her agent or attorney").

Section 12-12-70, Ala. Code 1975, provides that "[a]ny party may appeal from a final judgment of the district court in a civil case by filing notice of appeal in the district court, within 14 days from the date of the judgment or the denial of a posttrial motion, whichever is later...." Section 12-12-70 establishes a 14-day period to appeal a district-court judgment that is applicable to most civil actions, including breach-of-contract and detinue actions. See generally Cochran v. Wood, 504 So. 2d

297 (Ala. Civ. App. 1986). However, Ala. Code 1975, § 6-6-350, governs the time for appealing a judgment entered in an unlawful-detainer action. See Shamburger v. Lambert, 24 So. 3d 1139, 1142 (Ala. Civ. App. 2009). Section 6-6-350 provides:

> "Any party may appeal from a judgment entered against him or her by a district court to the circuit court at any time within seven days after the entry thereof, and appeal and the proceedings thereon shall in all respects, except as provided in [Ala. Code 1975, Title 6, Chapter 6, Article 8], be governed by this code relating to appeal from district courts."

A party aggrieved by an adverse judgment in an unlawful-detainer action has seven days to appeal the judgment.

III. The effect of the postjudgment motion

In all civil cases, including unlawful-detainer actions, the timely filing of a postjudgment motion suspends the running of the time for appealing a district-court judgment. See Ex parte Brown, 390 So. 3d 1119, 1120 (Ala. Civ. App. 2023). Rule 59(dc), Ala. R. Civ. P., provides that a party generally has 14 days to file a postjudgment motion in a civil action commenced in district court, but, for unlawful-detainer actions, under § 6-6-350, a party must file a postjudgment motion within seven days. In this case, Mitchell filed her postjudgment motion in the district court within six days of the entry of the district-court judgment, so her

12

postjudgment motion was timely filed as to all counts. The filing of the postjudgment motion suspended the running of the time for filing a notice of appeal.

The district court scheduled a hearing on the postjudgment motion and entered an order purporting to deny the postjudgment motion on April 11, 2025. However, a postjudgment motion in a district-court action may remain pending for only 14 days, which, in this case, was until April 3, 2025, unless the time for ruling on the postjudgment motion has been properly extended. See Rule 59.1(dc). By scheduling a hearing for April 11, 2025, the district court did not extend the time for ruling on the postjudgment motion. See generally K.R. v. W.L., 238 So. 3d 664 (Ala. Civ. App. 2017). Because the district court did not rule on the postjudgment motion before April 3, 2025, and the time for ruling had not been extended, the postjudgment motion was denied by operation of law on that date. See Williams v. Capital One Bank (USA), N.A., 192 So. 3d 4 (Ala. Civ. App. 2015). At that point, the time for filing a notice of appeal commenced. The order entered on April 11, 2025, purporting to deny the postjudgment motion was a legal nullity that did not extend the time for filing the notice of appeal. See id.

IV. Was the notice of appeal timely filed?

A. The appeal deadlines

Mitchell had 7 days from April 3, 2025, to file a notice of appeal from the district-court judgment entered on Ford's unlawful-detainer claim and 14 days from April 3, 2025, to file a notice of appeal from the district-court judgment entered on Ford's other claims. Although Rule 6(a), Ala. R. Civ. P., provides that, when a filing must be accomplished within 11 days or less, "intermediate Saturdays, Sundays, and legal holidays" shall be excluded in the computation, that rule does not apply to district-court unlawful-detainer actions. Rule 6(dc), Ala. R. Civ. P. Thus, Mitchell had until April 10, 2025, to file the notice of appeal from the judgment entered on Ford's unlawful-detainer claim. Mitchell had until April 17, 2025, to file the notice of appeal as to the district-court judgment entered on Ford's other claims.

B. The late filing and the excuse for late filing

Mitchell filed her notice of appeal on April 25, 2025, 22 days after her postjudgment motion was denied by operation of law. Regardless of the applicable appeal period, Mitchell did not file her notice of appeal within the established deadlines.

However, Mitchell maintains in her answer to the petition for the writ of mandamus that she was prevented from timely filing her notice of appeal by the clerk of the circuit court, who, we take judicial notice, also serves as the clerk of the district court and is authorized to receive notices of appeal from district-court judgments. See Premier Choice Realty & Invs., Inc. v. Lumpkin, [Ms. CL-2025-0749, Feb. 27, 2026] ___ So. 3d ___ n.1 (Ala. Civ. App. 2026). Mitchell says:

> "Initially, when [Mitchell] took her appeal for filing to the Dallas County Clerk's Office, the Dallas County Circuit Clerk would not accept the [a]ppeal for filing because bond in the amount of $22,000 was not paid. [Mitchell] then filed her notice of appeal on April 25[, 2025], 14 days later, ... due to delay caused by the Circuit Clerk's office."

Accepting those uncontroverted averments as true, see Ex parte Butts, supra, Mitchell attempted to file her notice of appeal on April 11, 2025, but the clerk would not accept the filing without the posting of a bond in approximately twice the amount of the district-court judgment.

Section 12-12-73, Ala. Code 1975, provides:

> "A supersedeas bond in twice the amount of the judgment shall be required of the appellant in any civil appeal to the circuit court. Upon the filing of such supersedeas bond and the timely filing of a notice of appeal, execution of the judgment shall be stayed pending final judgment on appeal."

However, that statute has been superseded by Rule 62(dc), Ala. R. Civ. P., which removes the requirement of posting a supersedeas bond to "require only a bond for costs or affidavit of substantial hardship, approved by the court, in lieu of said bond." See Mitchell v. Dexter Interiors, 381 So. 2d 90, 91 (Ala. Civ. App. 1980). Furthermore, the posting of a bond for costs or the filing of an affidavit of substantial hardship is not a jurisdictional prerequisite for appealing a district-court judgment to the circuit court. See Penick v. Southpace Mgmt., Inc., 121 So. 3d 1015, 1019 (Ala. Civ. App. 2013). Thus, the clerk erred by assuming that Mitchell had to post a supersedeas bond in twice the amount of the district-court judgment when filing her notice of appeal to the circuit court and rejecting her notice of appeal when tendered on April 11, 2025.

In Ex parte G.L.C., 281 So. 3d 401 (Ala. 2018), a mother attempted to file a notice of appeal of a judgment terminating her parental rights in the Baldwin Juvenile Court on the last day of the appeal period. Employees of the court misdirected the mother to the wrong office for filing the notice, and, by the time she located the correct office, it was closed for the day. The mother was directed to return the next day, and,

16

when she did, her notice of appeal was accepted and filed. An assistant clerk altered the date to indicate that the notice of appeal had been timely filed the day before. The Baldwin Juvenile Court dismissed the appeal as untimely, and this court affirmed the judgment of dismissal. The Supreme Court of Alabama reversed this court's judgment, holding that a filer cannot be prejudiced by the failure of the clerk to accept and docket a notice of appeal that has been properly delivered for filing. The supreme court held that the mother had been misled by judicial staff as to the appropriate office for filing, which, the court said, had led to her failing to place the notice of appeal in the physical possession of the proper clerk on the due date. Under the circumstances, the supreme court held that principles of equity required that the notice of appeal be deemed timely filed. Based on Ex parte G.L.C., "if a party makes a bona fide attempt in good faith to timely initiate an appeal and during that process the party is prevented from doing so by an act or the inaction of an employee of the judiciary, equity requires that the appeal be considered timely." Johnson v. City of Tuscaloosa, 375 So. 3d 1241, 1254 (Ala. Civ. App. 2022).

The principles of equity applied in Ex parte G.L.C. do not cure the untimeliness of the notice of appeal from the district-court judgment entered on Ford's unlawful-detainer claim. As shown above, Mitchell had to file her notice of appeal from that judgment by April 10, 2025. According to Mitchell herself, she did not deliver her notice of appeal to the clerk until April 11, 2025, one day late. Ex parte G.L.C. applies only when the party attempts to file the notice of appeal within the appeal deadline, not afterward. See Ex parte Seibert, 386 So. 3d 781 (Ala. 2023). Mitchell had already missed the appeal deadline for the judgment entered on the unlawful-detainer claim, so any error the clerk may have committed in refusing to accept her notice of appeal on April 11, 2025, cannot be considered the reason why Mitchell missed the deadline. Ex parte G.L.C. does not relieve Mitchell of her failure to promptly file a notice of appeal from the judgment entered on the unlawful-detainer claim.

On the other hand, the reasoning in Ex parte G.L.C. applies to the appeal of the district-court judgment on Ford's other claims. According to the answer to the petition for the writ of mandamus, Mitchell attempted to file her notice of appeal on April 11, 2025, which would have

been within the established deadline for filing a notice of appeal of the judgment on the breach-of-contract and detinue claims, but she was prevented from filing the notice of appeal by the error committed by the clerk's office. Cf. T.E.B. v. C.A., 402 So. 3d 240, 247 (Ala. Civ. App. 2024) (holding that a probate-court clerk had erred in refusing to accept postjudgment motion for filing because it contained an electronic signature, so motion would be deemed timely filed). Under these circumstances, the notice of appeal relating to the district-court judgment entered on the breach-of-contract and detinue claims is deemed to be timely filed, even though it was not stamped filed until April 25, 2025. The circuit court properly acquired jurisdiction over the appeal of the judgment entered on those claims.

V.     The motion to dismiss

Ford filed a motion to dismiss the case pursuant to Rule 12(b)(1), Ala. R. Civ. P., arguing that the circuit court had not acquired subject-matter jurisdiction because, he says, Mitchell had not timely appealed the district-court judgment.

> "The failure to file a timely notice of appeal is a jurisdictional defect that prevented the circuit court from acquiring jurisdiction over the appeal. See Kennedy v. Merriman, 963 So. 2d 86, 88 (Ala. Civ. App. 2007). 'A court must dismiss an

19

appeal for lack of jurisdiction if a party does not appeal within the time prescribed by statute.' Flannigan v. Jordan, 871 So. 2d 767, 770 (Ala. 2003)."

Shamburger, 24 So. 3d at 1142.

Mitchell did not file a timely notice of appeal from the judgment entered on the unlawful-detainer claim, so the circuit court had a mandatory duty to dismiss that part of the appeal relating to that claim. The circuit court erred in denying Ford's motion to dismiss that part of the appeal. But Mitchell did file a timely notice of appeal of the judgment entered on the breach-of-contract and detinue claims, so the circuit court did not err in denying the motion to dismiss those parts of the appeal.

VI. The motion to vacate the circuit-court order

In its order, the circuit court implicitly determined that Mitchell had not breached the purchase agreement and that she was the rightful owner of the mobile home. The circuit court awarded Mitchell possession of the mobile home and scheduled a hearing for damages. The circuit court had jurisdiction to enter that order because the breach-of-contract and detinue claims were properly before it, and it acted within its jurisdiction. See Ala. Code 1975, § 6-6-257 (holding that, upon dismissal of a detinue action, judgment may be entered for recovery of the property

20

in dispute and assess damages for the detention of the property). Because the circuit court acted within its jurisdiction, it did not err in denying Ford's motion to vacate the circuit-court order.

In reaching that determination, we conclude that the circuit court did not impermissibly adjudicate the unlawful-detainer claim in the circuit-court order. The district court determined that Mitchell had unlawfully detained possession of the mobile-home lot that Ford owned,[2] and it evicted Mitchell from the lot and awarded Ford $11,162.11 in damages. The circuit-court order did not make any determination that Mitchell had lawfully maintained possession of the mobile-home lot; it did not permit Mitchell to regain possession of the mobile-home lot; and it did not vacate the award of damages to Ford on account of the unlawful detainer. The circuit-court order did not alter the district-court judgment relating to the unlawful-detainer claim in any respect. It remains that Mitchell has been evicted from the mobile-home lot; that she, and her personal property, can no longer occupy that lot; and that she is liable for

---

[2]In the complaint, Ford did not claim that he was leasing the mobile home itself to Mitchell, and he did not state an unlawful-detainer claim relating to her continued possession of the mobile home. Thus, the district court did not find that Mitchell had unlawfully detained possession of the mobile home.

the unpaid lot-rental fees and late fees. The circuit court did not act outside its jurisdiction to address the district-court judgment entered on the unlawful-detainer claim.

## Conclusion

We have concluded that, based on the materials before us, the notice of appeal of the district-court judgment was not timely filed regarding the unlawful-detainer claim. Accordingly, Ford has shown a clear legal right to an order directing the circuit court to dismiss the appeal of the district-court judgment entered on the unlawful-detainer claim. Ford has not shown a clear legal right to any other requested relief. We, therefore, grant the petition in part and deny the petition in part. We direct the circuit court to dismiss the appeal of the district-court judgment entered on the unlawful-detainer claim, and we deny all other requested relief.

PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.

All the judges concur.